IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICHARD A. BRANDES, # Y-15076,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 18-cv-1438-MJR |
| | ) |
| **IDOC,** | ) |
| **JANE DOE (Task Employee),** | ) |
| **TASK,**[1] | ) |
| **ANITA BAZILE SAWYER,** | ) |
| **JOHN DOE #1 & 2 (C/O, Sergeant),** | ) |
| **C.E.C. CIVIGENICS,** | ) |
| **G.E.O GROUP,** | ) |
| **COUNSELOR YOUNG,** | ) |
| **MS. MILES,** | ) |
| **THOMAS,** | ) |
| **and JONSON,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint (Doc. 1), which claims that he was improperly coerced to sign a drug treatment contract, is now before the Court for a preliminary merits review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

---

[1] This acronym stands for "Treatment Alternatives for Safe Community." (Doc. 1, p. 2).

1

After fully considering the allegations in Plaintiff's Complaint, the Court concludes that this action is subject to summary dismissal. However, Plaintiff shall be allowed an opportunity to amend his complaint in order to state a viable claim, if one exists.

## The Complaint

Plaintiff was sentenced in July 2016 to serve a 49-month sentence. (Doc. 1, p. 5). He was sent initially to the Stateville/NRC, where he was confined to his cell for nearly 24 hours per day. The cell was contaminated with human waste and infested with vermin. Jane Doe #1 (TASK officer/employee) interviewed Plaintiff and questioned him about his eligibility for a drug treatment program, which she stated would cut his time in half and place him in a better facility. Plaintiff was not a current drug user and initially refused to sign the treatment contract prepared by Jane Doe #1. She continued to pressure Plaintiff to sign, threatening that if he did not, his stay at Stateville/NRC would be longer, he would most likely be placed in a dangerous maximum security prison, and he would be listed as "noncompliant." (Doc. 1, pp. 5-6). Plaintiff eventually signed the treatment contract "under duress." (Doc. 1, p. 6).

Plaintiff was sent to Southwestern Illinois Correctional Center ("SWICC"), where John Doe #1 (Sergeant or C/O) presented him with a consent for drug treatment contract. *Id.* As before, Plaintiff refused to sign. John Doe #1 threatened to issue Plaintiff 2 disciplinary tickets which would land him in segregation for at least a month and result in a disciplinary transfer, so Plaintiff signed that contract under duress. (Doc. 1, p. 6).

Plaintiff began his "forced treatment," under threat from Counselor Miles of disciplinary action and a transfer if he did not participate. *Id.* Plaintiff wrote many grievances on the forced treatment and invalid contracts, against TASK, C/O John Doe #1, and the G.E.O. Group, all of which were ignored.

As relief, Plaintiff seeks money damages and the implementation of an electronic grievance system at SWICC. (Doc. 1, p. 8).

**<u>Dismissal of Certain Defendants</u>**

Plaintiff lists several Defendants among the parties (Doc. 1, p. 2), but fails to include any allegations against them in the body of his Complaint. These include the IDOC (Illinois Department of Corrections), SWICC Warden Sawyer, C.E.C. Civigenics, Counselor Young, Counselor Thomas, and Counselor Jonson.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the Complaint, if any, are directed against him or her. Mrely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, a supervisor such as Warden Sawyer cannot be held liable for the actions of subordinate employees, as the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Accordingly, Defendants Sawyer, C.E.C. Civigenics, Young, Thomas, and Jonson will be dismissed from this action without prejudice.

Additionally, even if Plaintiff had included allegations against the IDOC, that state government agency cannot be sued for damages in a civil rights action. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v.*

*Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). For this reason, the IDOC shall be dismissed from the action with prejudice.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

> **Count 1:** Jane Doe #1 and John Doe #1 coerced and threatened Plaintiff into signing contracts to undergo drug treatment during his incarceration in the Illinois Department of Corrections;
>
> **Count 2:** Miles, TASK, and G.E.O. Group forced Plaintiff to undergo treatment while at SWICC based on the contracts that Plaintiff signed under duress, and ignored Plaintiff's grievances.

Both counts shall be dismissed for failure to state a claim upon which relief may be granted.

## Count 1 - Contracts

Plaintiff's theory of liability – that he was "forced" to participate in a drug treatment program based on illegal contracts – does not raise a constitutional claim. Even if the contracts were deemed to be invalid under the terms of the Unified Commercial Code, such a conclusion does not implicate any constitutional right, and does not give rise to a cognizable civil rights

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

claim.

Plaintiff contends that Jane Doe #1 violated the Eighth Amendment's prohibition on cruel and unusual punishment by threatening that if he did not sign the treatment contract, he would remain in "isolation" confinement at Stateville/NRC and then be sent to a maximum-security prison where he could face a heightened risk to his safety from other inmates.[3] (Doc. 1, pp. 5-6). This prediction is not the type of "threat" that implicates constitutional concerns. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). Jane Doe #1 merely described Plaintiff's likely housing assignment if he chose not to enroll in the treatment program; the choice to enroll or not remained Plaintiff's to make. If Plaintiff had not signed the contract and had been sent to a higher-security-level prison than SWICC, that fact alone would not amount to an Eighth Amendment violation. Similarly, lengthening his stay at Stateville/NRC would not, in and of itself, violate his Eighth Amendment rights.[4]

Finally, Plaintiff characterizes his treatment by Jane Doe #1 as "retaliation" for not complying with her plan to send him to drug treatment. (Doc. 1, p. 6). The crux of a retaliation claim is that a prison official took some adverse action against an inmate because the inmate filed a grievance or lawsuit, or otherwise engaged in speech that is protected by the First

---

[3] If Plaintiff wishes to further attempt to pursue a claim against Jane Doe #1 based on conduct that occurred at Stateville/NRC, such a claim will be subject to severance into a new case pursuant to Federal Rules of Civil Procedure 20 and 21. *See also George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). Plaintiff will be assessed a separate filing fee for the severed case, and the case will be transferred to the Northern District of Illinois for a merits review pursuant to 28 U.S.C. § 1915A. If the case is deemed to have no merit, Plaintiff risks the assessment of a "strike" within the meaning of 28 U.S.C. § 1915(g).

[4] The cell conditions Plaintiff describes at Stateville/NRC may have violated Eighth Amendment standards – but if they did, Plaintiff's remedy would be to bring an action against the officials responsible for housing him in those conditions, in the Northern District of Illinois, where the alleged violation took place. Any such claim should be considered dismissed from this action without prejudice.

5

Amendment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018). Here, while Plaintiff views his enrollment in the drug treatment program as an adverse or undesirable placement, it was not a "punishment" imposed upon him as retaliation for his reluctance or objection to sign the contract that Jane Doe #1 presented to him. As noted above, Plaintiff could have persisted in his refusal to sign the contract, and if he had not signed, his prison placement would have been made according to procedures applicable to any other inmate. No retaliation is apparent from the facts presented in the Complaint.

For these reasons, Plaintiff fails to state a constitutional claim against Jane Doe #1.

Turning to the second contract, which Sergeant C/O John Doe #1 pressured Plaintiff to sign after his arrival at SWICC, Plaintiff's facts again do not indicate any constitutional violation. According to his narrative, Plaintiff was assigned to SWICC because he signed up for the treatment program, albeit under "duress." John Doe #1 explained that Plaintiff could put in for a transfer after 6 months at SWICC. He warned Plaintiff of the disciplinary consequences if he did not follow through with the treatment program, which could include segregation and a punitive transfer to Pinckneyville Correctional Center (a less desirable prison, as described by John Doe #1). Again, Plaintiff faced 2 choices – bail out of the treatment program and go to another prison, as well as incur disciplinary action, or continue for the time being in the unwanted treatment program at SWICC, a lower-security-level prison.

Neither of these options violated Plaintiff's constitutional rights. Prison officials may move inmates to any prison within the system, and a prisoner does not possess a liberty or property interest in his prison classification or assignment. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). Likewise, a change

of prison assignment does not run afoul of the Eighth Amendment. Plaintiff, unlike most inmates, was given the opportunity to be housed in a more desirable location (SWICC), so long as he agreed to enter the treatment program. After his enrollment, he could not expect to drop out of the program while still maintaining the benefit of his bargain (the SWICC placement). Whether or not he stayed in the program, prison officials at all times had the discretion to transfer him to another prison without implicating any due process rights. *DeTomaso*, 970 F.2d at 212. And if Plaintiff had refused to sign the contract and faced a disciplinary charge, due process requirements would have governed the disciplinary hearing process. *See Wolff v. McDonnell*, 418 U.S. 539 (1974).

Plaintiff's encounter with Sergeant C/O John Doe #1[5] also does not support a retaliation claim. Plaintiff was not "punished" for voicing his objections to signing the contract at SWICC to enter the treatment program there (which he had already contracted to do). By signing the consent to treatment and remaining at SWICC, Plaintiff got what he bargained for when he chose to sign the first contract presented to him by Jane Doe #1. Had he instead refused to go through with the program, any disciplinary action he might have faced would have been a consequence of his decision to exit the drug treatment program, rather than a punishment for exercising his right to free speech. To the extent that Plaintiff views his unwilling participation in the drug treatment program itself as punishment or an adverse action, he had two opportunities to avoid that program, when he was presented with each of the contracts that he ultimately signed. He made his choice and has no basis to claim that the choice, or its consequences, were unconstitutional.

For these reasons, **Count 1** shall be dismissed with prejudice.

---

[5] Plaintiff lists two John Doe Defendants on page 2 of the Complaint, which the Clerk has designated as John Doe #1 and John Doe #2 (Correction Officer/Sergeant). It is not clear from Plaintiff's narrative whether he interacted with both John Doe #1 and #2 while he was at SWICC. Nonetheless, the facts presented fail to state a viable claim against either John Doe Defendant.

### Count 2 – Forced Treatment

According to Plaintiff, he was given "forced treatment" at SWICC as a result of signing the contracts under duress. (Doc. 1, p. 6). He does not describe what that treatment actually entailed. He claims that according to Counselor Miles, if he refused to participate, he would go to segregation, get tickets, and be transferred to Pinckneyville. *Id.* The Complaint does not disclose how long Plaintiff remained at SWICC in the treatment program, nor does it describe his conditions of confinement there. Because Plaintiff is now housed at Lawrence, it is clear that at some unknown time, and for an undisclosed reason, he was moved away from SWICC.

Plaintiff wrote grievances against his "forced treatment," naming TASK, C/O John Doe #1, and G.E.O. Group. He asserts that the lack of reply to these grievances violated his due process rights. This, however, is not the case. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

The mere fact that Plaintiff was required to participate in the drug treatment program at SWICC does not suggest any violation of his constitutional rights, even where Plaintiff would have faced adverse consequences (disciplinary action and/or a transfer) if he ceased participation. It is conceivable that some aspect of Plaintiff's conditions of confinement at SWICC, such as forced medication or unsanitary housing conditions, might have run afoul of the Eighth Amendment – but the Complaint does not mention any facts that would support such a claim. As such, **Count 2** fails to state a claim upon which relief may be granted, and shall be

dismissed without prejudice.

Because neither Count 1 nor Count 2 survives threshold review under § 1915A, Plaintiff's Complaint (Doc. 1) shall be dismissed without prejudice. However, Plaintiff shall be allowed an opportunity to submit an amended complaint, if he believes he can set forth facts that will support a constitutional claim. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review under § 1915A.

As for Plaintiff's request for injunctive relief, even if he succeeds in stating a viable claim in an amended complaint, his request for the implementation of an electronic grievance system at SWICC became moot when Plaintiff was transferred away from that institution, and shall not be considered. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

### **Pending Motions**

Plaintiff has filed two motions for recruitment of counsel (Docs. 3, 10). The dismissal of the Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, a district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-

67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

According to Plaintiff's first motion, he wrote to 2 attorneys but received no response. He did not attach copies of his letters. (Doc. 3, p. 1). He says that he cannot get more addresses because he is in prison. *Id.* In his second motion, received and filed September 6, 2018 (Doc. 10), Plaintiff lists 3 attorneys/firms to whom he has written, one of which has represented him on a different case. (Doc. 3, pp. 1-2; Doc. 10, pp. 1-2). He states that they will not take his case without a retainer. Taking Plaintiff at his word (he fails to attach any documentation of his correspondence), this information may represent reasonable efforts to obtain counsel.

As to the second inquiry, Plaintiff reveals that he has a limited education, only "some high school." (Doc. 3, p. 2; Doc. 10, p. 2). In his first motion, Plaintiff states that he believes he is unable to represent himself because of the "complexity of the case," his lack of knowledge, and his limited law library access. (Doc. 3, p. 2). Oddly, in his second motion, he checked the

box to indicate that his "ability to speak, write, and/or read English is limited because English is not [his] primary language." (Doc. 10, p. 2). The Court finds this assertion questionable because in Plaintiff's first motion, Plaintiff did *not* indicate in any way that English was not his primary language, or that he has any limitations on his ability to speak, write, or read the language, even though the form motion presented check-off options to so inform the Court. (Doc. 3, p. 2). The second motion lists no other reason why Plaintiff is unable to represent himself at this stage. Taken together, these motions raise a question as to whether Plaintiff has made a false representation of fact to the Court regarding his English-language abilities. Plaintiff is warned that the Court takes the issue of perjury seriously, and that any facts found to be untrue in a complaint or motion may be grounds for sanctions, including dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand). *See also* FED. R. CIV. P. 11(b), (c) (a document presented to the court for an improper purpose may result in sanctions if the presenting party fails to correct a violation).

Aside from the above concern about the truth or falsity of Plaintiff's representation of his English language fluency, the Complaint reflects that Plaintiff is articulate and capable of stating the relevant facts and his legal claims. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak, and all that is required is for Plaintiff to include factual content to support a claim related to his conditions of confinement at SWICC, or some other constitutional claim, if facts exist that would indicate a civil rights violation. Plaintiff alone has knowledge of these facts, and no legal training or knowledge (or access to law library time) is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time and the motions (Docs. 3 and 10) are **DENIED** without prejudice. The

Court will remain open to appointing counsel as the case progresses.

## Disposition

**COUNT 1** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendant **IDOC** is **DISMISSED** from this action with prejudice. Defendants **JANE DOE #1, SAWYER, JOHN DOE #1 and #2, C.E.C. CIVIGENICS, YOUNG, THOMAS,** and **JONSON** are **DISMISSED** from this action without prejudice.

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before October 5, 2018), in accordance with the instructions to follow.

**IT IS FURTHER ORDERED** that, by the same 28-day deadline, Plaintiff shall explain to the Court in writing whether or not his assertion in the Motion for Attorney Representation (Doc. 10), that English is not his primary language, is true. Plaintiff shall state which language is his primary/native language, if it is not English. If English is in fact Plaintiff's primary language, then Plaintiff shall explain why he checked Box 6 on page 2 of his motion, to state that English is not his primary language. (Doc. 10, p. 2).

The Clerk is **DIRECTED** to send Plaintiff a copy of the Motion for Attorney Representation at Doc. 10, to assist him in responding to this Order.

To prepare the amended complaint, it is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First

Amended Complaint" and include Case Number 18-cv-1438-MJR. The amended complaint shall **NOT** include the claim designated herein as **COUNT 1**, because that claim was dismissed with prejudice. The amended complaint may include the claim designated above as **COUNT 2**, as it relates to Plaintiff's conditions of confinement at SWICC.

Plaintiff is warned that if he chooses to re-plead any claim against Defendant Jane Doe #1 (the TASK employee at Stateville/NRC), or any claim arising from his confinement at Stateville/NRC in *this* action, such claim will be subject to severance into a separate case pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). If a claim is severed pursuant to *George*, Plaintiff shall be assessed another filing fee for the severed case.

In the amended complaint, Plaintiff shall specify, *by name*,[6] each Defendant alleged to be liable under the particular count, as well as the actions alleged to have been taken by that Defendant. Plaintiff should state facts to describe what each named Defendant did (or failed to do), that violated his constitutional rights. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces all prior complaints, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any

---

[6] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

exhibits he wishes the Court to consider along with the First Amended Complaint.

If Plaintiff fails to file an amended complaint within the allotted time or consistent with the instructions set forth in this Order, the action shall be dismissed with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint. If the First Amended Complaint fails to survive review under § 1915A, Plaintiff may also incur a "strike."

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 7, 2018**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
